**Daniel HODGE, Relator,**

v.

**HODGE CONSTRUCTION and Aetna Casualty and Surety Co., A Home of Your Own and Federated Mutual Insurance Co., Respondents,**

**Minnesota Department of Public Welfare, Intervenor Below.**

**No. C2-85-1251.**

Supreme Court of Minnesota.

Nov. 27, 1985.

Cortleu G. Cloutier, Minneapolis, for relator.

Peter Pustorino, Minneapolis, for Hodge Const., Gerald M. Linnihan, St. Paul, for A Home of Your Own, Patricia Sonnenberg, St. Paul, for Dept. of Public Welfare.

YETKA, Justice.

For the second time, employee seeks review of a decision of the Workers' Compensation Court of Appeals which, while accepting the compensation judge's underlying findings of fact, set aside his conclusion that a heart attack sustained by employee on October 23, 1981, had arisen out of and in the course of his employment. The WCCA substituted its own contrary determination, and when the decision was first reviewed by this court, we remanded so that the WCCA could reconsider the compensation judge's determination in light of *Hengemuhle v. Long Prairie Jaycees,* 358 N.W.2d 54 (Minn.1984), and *Egeland v. City of Minneapolis,* 344 N.W.2d 597 (Minn.1984). *See Hodge v. Hodge Constr. Co.,* 359 N.W.2d 572 (Minn.1984). Having reconsidered its decision, the WCCA issued a second decision holding that the prior one was correct and had been consistent with *Hengemuhle* and *Egeland.* At this time, employee again contends that the WCCA failed to apply the appellate review standard set forth in Minn.Stat. § 176.471 (1984) as explicated in *Hengemuhle.* We agree that its review of the compensation judge's decision did not apply the principles set forth in that case and have determined, from our review of the entire record, that the compensation judge's determination was a reasonable conclusion based on findings which were supported by substantial

evidence. We, therefore, reverse the decision under review.

On October 23, 1981, the date of his heart attack, employee was a self-employed contractor. He was 41 years old, slightly overweight, had borderline high blood pressure not then being treated by medication, and had discontinued heavy smoking 3 years before. On that day, he agreed to perform "troubleshooting" work requiring him to inspect and repair roofs on two homes at Charles City, Iowa, 100 miles from his home in Wells, Minnesota, and on a home in Rockwell, Iowa, 70 miles from Wells. During the afternoon of that day, employee developed symptoms of an infarct, and he was hospitalized in Wells that evening. His family doctor, Dr. J.R. Watkins, diagnosed a heart attack and a severe coronary artery occlusion. A few days later, a heart blockage developed and employee was transferred to a Rochester hospital where he was treated by Dr. Byron Olney, a cardiovascular specialist at the Mayo Clinic.

Employee sought compensation for the disability resulting from the heart attack, claiming that work stresses, both physical and psychological in nature, during the day on October 23, 1981, had been a substantial contributing factor in his heart attack.

It is clear that such stresses were not present during the morning. En route to Charles City, employee stopped at Northwood, Iowa, for 20 minutes or so to have coffee with a friend. After arriving at Charles City, he inspected both homes, then had a lunch, and took a short nap before beginning his work. However, he testified that he took the nap to prepare himself for an afternoon of very hard work and said that, because of a forecast of snow, he felt pressured to complete all of the scheduled repair jobs that day so he tried to work at an unusually fast pace. The compensation judge's findings reveal that he credited this testimony and employee's further testimony about his work activities and the development of his symptoms. Thus, the compensation judge found:

10. That on October 23, 1981, A Home of Your Own contracted with Hodge Construction Company for carpentry work on three houses located in the State of Iowa. The employee performed carpentry work on two of the three houses that day. He was unable to complete the agreed upon carpentry work due to a myocardial infarction.

11. That the employee realized, after examining the work to be done on these three houses, that he would have to do "eight hours of work in four hours." He worked unusually hard and fast trying to complete these jobs before sunset. He believed that snow was predicted for the next day in that area, and for that reason felt pressured to get the roofs of the houses finished.

12. That at the first house the employee worked on, he climbed up on the roof and tarred and calked down the first four rows of shingles on each side of the gabled roof. At the second house the employee work [sic] on, he unloaded the extension ladder, scaffolding, staging plank and tools. He climbed up on the ladder, lifting the metal flashing and chopped off part of the redwood fascia board surrounding the hip roof with a wood chisel and hatchet. The edges of the roof measured about 250 feet.

13. That during the course of his work activities at the first and second houses, employee began to feel indigestion, sweat profusely, have pain in his chest, shortness of breath and numbness in his right arm.

14. That while standing on a ladder strenuously chopping on the fascia board at the second house, employee felt so poorly that he stopped working and got down off the ladder for a while to rest in his truck. He then returned to chopping on the fascia board, but was unable to continue and again rested in his truck. Eventually, the employee determined that he was physically unable to continue work, informed the owner of the house that he was leaving and left for his home in Wells, Minnesota.

15. That on the way to his home in Wells, Minnesota, the employee stopped at the third home he was to work on in Rockwell, Iowa, and viewed the problems for him that day. During the time he was at the house in Rockwell, the employee continued to suffer with pains in his chest area.

The employer-insurer obtained a statement from employee on November 5, 1981, 12 days after the heart attack and while he was hospitalized. In contrast to employee's testimony, the statement relates that employee worked only on two rows of shingles at the first house and that he had not done any strenuous work at the second one when he began to feel indigestion. The statement contains no mention that employee felt pressured to finish his work or had hurried to do so. The employee insists that the statement was not entirely accurate and said that he had been under medication when he gave it. The history taken at the Wells hospital when employee was admitted on the evening of October 23, 1981, contains no statement that employee had been hurried or under pressure during the day, although a Mayo Clinic record dated January 5, 1982, states that he suffered an infarct which "came on during a day when he was trying to hurry through three separate roofing jobs."

Dr. Watkins and Dr. Olney, both of whom were employee's treating doctors, were asked to assume that employee's work had entailed the physical activities, haste, and the feeling of pressure to finish his work to which employee had testified. Both opined that the heart attack was causally related to his employment activities. Dr. Thomas Arnold, assuming that employee's work had been as described in his statement, said that the work had not been a substantial contributing factor in the heart attack, which he blamed entirely on the state of employee's right coronary artery. However, asked by employee's counsel to assume that his activities had been as he testified, Dr. Arnold said that trimming fascia board is hard physical work which could have been a contributing factor in the heart attack. The compensation judge made findings incorporating the opinions of Dr. Watkins, Dr. Olney and the opinion expressed by Dr. Arnold in response to the hypothetical posed by employee's counsel. As trier of fact, the compensation judge was, of course, required to resolve whatever conflicts there were in the opinions of these medical witnesses.

In light of the findings relating to the medical opinions and of the findings concerning employee's work, we are compelled to hold, contrary to the WCCA, that the compensation judge's conclusion that the heart attack arose out of and in the course of employee's employment was supported by substantial evidence in view of the entire record. It is, of course, true that there was conflicting evidence with respect to what work stresses employee encountered, but the compensation judge found employee a credible witness. It is also true that variant inferences could reasonably be drawn from the evidence, e.g., the fact that employee did not make an effort to arrive at the job site earlier in the day and the fact that he took a short nap after his lunch could permit a reasonable inference that he did not feel any pressure to complete all of his work that day. On the other hand, it could be inferred, as he testified, that he decided to nap because he knew he would have to work hard and fast and that he did feel pressured to finish the work that day. The compensation judge drew the latter inference, and the WCCA erred in rejecting it. Moreover, employee's testimony, accepted by the compensation judge, was a sufficient foundation for the medical opinions causally relating the heart attack to employee's work. Thus, we are compelled to conclude that the evidence, as a whole, furnished substantial support for the compensation judge's findings and that, in turn, the findings supported the determination that employee's heart attack was employment related.

In *Hengemuhle*, this court construed Minn.Stat. § 176.471 (1984) as requiring the WCCA, as a reviewing court, to consider all of the evidence, both that sup-

porting and that opposing the compensation judge's findings. However, it added that, in applying the standard of review set forth in that statute:

> The Workers' Compensation Court of Appeals must also give due weight to the opportunity of the compensation judge to evaluate the credibility of witnesses appearing before the judge. Further, in applying the substantial evidence standard, where the evidence is conflicting or more than one inference may reasonably be drawn from the evidence, the findings of the compensation judge are to be upheld. In other words, the court of appeals is not to substitute its view of the evidence for that adopted by the compensation judge if the compensation judge's findings are supported by evidence that a reasonable mind might accept as adequate.

358 N.W.2d at 59–60. In this case, the WCCA, without apparent justification, failed to give due weight to the compensation judge's opportunity to determine the credibility of the employee, substituting its own view on that issue, and it failed also to accept inferences the compensation judge had reasonably drawn from conflicting evidence. However, application of those principles requires the conclusion that the compensation judge's findings and determination were supported by substantial evidence in view of the entire record and, thus, should have been affirmed. Consequently, we reverse the decision of the WCCA and remand for reinstatement of the decision of the compensation judge.

Employee is awarded $400 in attorney fees.

Reversed and remanded.