Leonard R. KULENKAMP, Respondent,

v.

TIMESAVERS, INC. and Midland Insurance Company/Minnesota Guaranty Association, Relators.

No. C6–87–1967.

Supreme Court of Minnesota.

March 25, 1988.

---

Ellen L. Maas, Minneapolis, for relators.

David Cody, St. Paul, for respondent.

WAHL, Justice.

Timesavers, Inc. and its workers' compensation insurer, Midland Insurance Company/Minnesota Guaranty Association (hereinafter employer/insurer) seek review of a Workers' Compensation Court of Appeals' decision reversing the findings and order of a compensation judge who considered the issue of primary liability in a discontinuance proceeding. We reverse and remand for further proceedings before the compensation judge.

In November 1973, Leonard R. Kulenkamp (hereinafter employee) started working as a janitor for employer, a company that manufactures wide belt sanding ma-chinery. At the time employee was hired in 1973, the company-required physical examination disclosed bilateral inguinal hernias. Employee reported that he had the hernias since childhood but had experienced no problems as a result. Employer discharged employee, advising employee to have the hernias repaired if he wanted his job back. Employee underwent hernia repair in early 1974 and was rehired by employer in the shipping and receiving area. In August 1975, employee's right inguinal hernia recurred and was again repaired. Employee returned to work; and between 1976 and 1980, worked as a power saw operator, a "move man" putting timbers under machinery to move it, and as an assembler.

By June 1980, employee's left inguinal hernia had recurred and surgical repair was scheduled for August; however, this was postponed indefinitely because of "financial problems." Employee continued working with a 25 pound lifting restriction because of his hernia. In October 1982, employee was transferred to a position as a parts crib attendant, a job involving stocking and inventorying parts. The job required bending, stooping, twisting and lifting parts weighing up to 45 pounds. For parts weighing over 45 pounds, crib attendants were to use mechanical assistance such as forklifts and cranes. Employee held this position for the next two years.

On February 14, 1984, employee underwent a surgical repair of his left recurrent inguinal hernia which was a "large one" extending down into the scrotum. The circumstances surrounding the necessity for this surgery are the center of the dispute in this case. According to the employee, he had experienced no problems with his hernia until he attempted to lift a pan of parts while at work the day before. However, he did not report an injury at that time. Instead he told his supervisor for that day he was in pain and needed to leave. According to the supervisor, prior to February 13, employee had informed the employer that he had a doctor's appointment

scheduled for that day; and after lunch on the 13th, employee said he was not feeling well. The supervisor told employee to go home and rest before his appointment.

The notes of Dr. Michael McLaughlin, employee's surgeon, reflect that employee reported a recurrence of the hernia when he was "doing some heavy lifting approximately 3 days [prior to the 13th of February]. This has not been bothering him although he has not tried to push the lump back inside the abdomen." On admission to the hospital for surgery, the intake nurse recorded the following history from employee: "L. Inguinal Hernia—Has had a couple of years but worse since last Thurs." According to the employee, Dr. McLaughlin's notes were in error and the "error" was later rectified by Dr. McLaughlin who wrote a letter in which he stated that employee's symptoms manifested themselves on February 13, 1984 instead of three days prior as listed in his notes. Dr. McLaughlin also stated that employee's lifting activities at work were a "substantial contributing cause of the development of [employee's] left recurrent inguinal hernia and the necessity for surgery."

In May 1984, employee attempted a return to work in the parts crib room. Employer sent employee home because the job was not within his restrictions and nothing involving less lifting was then available. Employee again attempted a return to work on June 4, 1984 and worked until August 3, 1984. Between August 1984 and September 1985, employee was treated by numerous physicians for his hernia condition and related problems. Employee developed a chronic pain syndrome, and inpatient pain clinic treatment was recommended. Employer, however, would not authorize payment for it.

Over the next several months, a number of unsuccessful attempts were made to return employee to work. Employer/insurer eventually filed a notice of intention to discontinue benefits asserting as grounds that employee had left suitable employment. Employee objected to the discontinuance of benefits and the matter was scheduled for a hearing before a compensation judge on May 23, 1986.[1] Ten days before the hearing, employer/insurer notified the employee of its intent to litigate the issue of primary liability.

At the commencement of the hearing, employee objected to the untimely defense claiming that he was not prepared to address the issue medically; employee rejected the option of a continuance, however, because that would further delay reinstatement of benefits. While taking notice of the tardiness of the defense, the compensation judge nevertheless allowed the employer/insurer to proceed subject to the employee's right to secure post-hearing medical evidence on the issue. Employee apparently decided to rest his case on the evidence submitted at the hearing.

The compensation judge declined to reinstate benefits, finding that employee's testimony that he sustained a traumatic hernia on February 13, 1984, to be discredited by other evidence and the circumstances leading up to the surgery. The compensation judge further found employer/insurers' discontinuance of benefits to be justified. On appeal, the Workers' Compensation Court of Appeals reversed concluding that a discontinuance proceeding was an improper forum in which to litigate the issue of primary liability because of "constitutional due process requirements." The Workers' Compensation Court of Appeals further found that the compensation judge's findings relating to primary liability lacked substantial evidentiary support and vacated them; but it also ruled that its decision was not intended to bar a subsequent denial of primary liability by the employer/insurer. Finally, the Workers' Compensation Court of Appeals ordered an additional award as a penalty under Minn. Stat. § 176.225 (1984).

1. The employee had also requested an administrative conference but the parties agreed it was not timely. Benefits were suspended and the matter was referred for hearing before a compensation judge. Minn.Stat. §§ 176.241, subd. 3a and 176.242, subd. 2(b) (1986).

■ Basic fairness requires that the parties in a workers' compensation proceeding be afforded reasonable notice and an opportunity to be heard before decisions concerning entitlement to benefits can be made. *See Lauer v. Tri–Mont Coop. Creamery*, 287 Minn. 221, 178 N.W.2d 248 (1970). The Workers' Compensation Court of Appeals essentially determined that it was unfair to require the employee to meet the employer/insurers' defense on 10 days' notice. Instead of simply reversing and remanding, however, the Workers' Compensation Court of Appeals ruled that consideration of primary liability in a discontinuance proceeding was constitutionally improper. We do not agree. So long as a party has reasonable notice, we see nothing constitutionally defective about considering the issue at the hearing before a compensation judge. Indeed, consideration of primary liability at such hearing is consistent with *Zontelli v. Smead Mfg.*, 343 N.W.2d 639 (Minn.1984) (suggesting that parties be required to litigate primary liability at initial hearing before a compensation judge or be precluded from raising it later so as to eliminate "piecemeal litigation" and forcing an employee to prove a claim when witnesses are gone and recollections are "dim").

■ The Workers' Compensation Court of Appeals concluded that consideration of the tardy defense precluded employee from gathering the necessary evidentiary medical evidence; and employee argues on appeal to this court that proving a primary liability claim also involves "trial strategy, tactics and overall case preparation." The hearing in this case was held on May 23 and June 4; and the compensation judge allowed the employee the opportunity to "marshall" his evidence post-hearing. Employee declined to do so; and he does not state by way of an offer of proof just what it is he would have done differently if he had been given more notice. Nevertheless, since the Workers' Compensation Court of Appeals determined that the employee was prejudiced by the late notice, we will defer to that finding and remand the matter for

further proceedings before the compensation judge so that the employee may have the opportunity to adequately prepare and meet the primary liability defense.

■ 2. We next consider whether the Workers' Compensation Court of Appeals vacated findings of fact contrary to *Hengemuhle v. Long Prairie Jaycees*, 358 N.W. 2d 54 (Minn.1984). The employee in this case claimed his hernia disabled him when he lifted heavy parts at work on February 13, 1984. The compensation judge found that this claim lacked credibility in view of evidence that employee's hernia became active in 1980, that employee's surgeon and the hospital intake nurse each recorded a history of a longstanding problem that became acute several days before the 13th of February, and the report of employee's surgeon indicating that the hernia he repaired had existed for quite some time. As there was evidence to support the compensation judge's findings, the Workers' Compensation Court of Appeals should not have reversed the finding of no traumatic hernia. *Henrichs v. Essig Coop. Creamery Ass'n*, 293 Minn. 492, 198 N.W.2d 135 (1972); *Zellmer v. Univac*, 290 Minn. 271, 187 N.W.2d 280 (1971); *Hillman v. Northwest Fruit*, 207 Minn. 377, 291 N.W. 609 (1940); *Brajan v. Oliver Iron Mining Co.*, 181 Minn. 296, 232 N.W. 342 (1930); *Haworth v. United Presbyterian Church*, 175 Minn. 553, 221 N.W. 905 (1928).

■ On appeal the employee claims the evidence established that he sustained a compensable hernia in that it had been aggravated by his work activities over the years. *Balow v. Kellogg Coop. Creamery Ass'n*, 248 Minn. 20, 78 N.W.2d 430 (1956). *See generally*, 1 A. Larson, *The Law of Workmen's Compensation* § 12.23 (1985 and Supp.1987). Employee, however, made no attempt to prove this at the hearing. Nevertheless, because we have deferred to the Workers' Compensation Court of Appeals' finding that the employee was prejudiced by the late notice of the issue of primary liability and have remanded the

matter for further proceedings, the employee will have an opportunity to relitigate this issue. *Cf., Marose v. Maislin Transport,* 413 N.W.2d 507 (Minn.1987). If the compensation judge finds that the hernia is work-related, because the medical evidence fairly well established that the employee was functionally disabled by his chronic pain syndrome, benefits from the time of discontinuance to at least the time of the hearing, should be reinstated.

 3. The compensation judge found no basis for an additional award as a penalty,[2] and the Workers' Compensation Court of Appeals reversed. We agree with the compensation judge. The record reveals no basis for such an award. *Showalter v. Campbell Soup Co.,* 253 N.W.2d 154 (Minn.1977).

Reversed and remanded for further proceedings consistent with this opinion.

**2.** Minn.Stat. § 176.225, subd. 1 (1984) provides for an additional award as a penalty as follows:

Upon reasonable notice and hearing or opportunity to be heard, the division, a compensation judge, or upon appeal, the workers' compensation court of appeals or the supreme court may award compensation, in addition to the total amount of compensation award, of up to 25 percent of that total amount where an employer or insurer has:

(a) instituted a proceeding or interposed a defense which does not present a real controversy but which is frivolous or for the purpose of delay; or,

(b) unreasonably or vexatiously delayed payment; or,

(c) neglected or refused to pay compensation; or,

(d) intentionally underpaid compensation. Minn.Stat. § 176.225, subd. 1 was amended subsequent to the discontinuation of benefits in this case. *See* 1986 Minn.Laws ch. 461, § 24.