Randy EVEN, Respondent,

v.

KRAFT, INC. and Crawford & Company, Relators,

Minnesota Dept. of Jobs and Training, Division of Rehabilitation Services, intervenor, Respondent.

No. C6–89–905.

Supreme Court of Minnesota.

Sept. 22, 1989.

---

Jardine, Logan & O'Brien, Timothy S. Crom, St. Paul, for relators.

Sieben, Grose, Von Holtum, McCoy & Carey, Ltd., Timothy J. McCoy, Minneapolis, and Minnesota Dept. of Jobs and Training, Div. of Rehabilitation Services, Roger Bevis, St. Paul, for respondent.

KEITH, Justice.

The Workers' Compensation Court of Appeals reversed a compensation judge's denial of temporary benefits. We reverse and reinstate the decision of the compensation judge.

Randy Even is mildly retarded with a full scale IQ of 67. He graduated from Sauk Rapids High School in 1977 by taking special classes. Following his graduation from high school, he started working for Kraft as a general laborer at a plant in Melrose. His job duties included "pailing cheese" into hoops, filling barrels with cheese, shoveling cheese, cutting cheese on a table and "pailing" salt on it.

In April 1984, the employee was seen by a doctor at the Melrose Clinic for complaints of back and neck pain. The doctor who examined the employee suspected the employee's symptoms were functional in nature; and the doctor noted that the employee had been seen on a number of occasions in the past concerning ill-defined symptoms with no clear-cut etiology. In August and October 1984, the employee was seen by a chiropractor at the Melrose Clinic for complaints of upper back and neck pain, tension, anxiety, and memory loss.

On December 17, 1984, the employee injured his lower back when he slipped on an accumulation of butterfat on the floor of the employer's plant. The employee experienced pain in his middle and lower back. He reported the incident to his foreman who sent him to the Melrose Clinic. Following this injury, the employee was assigned to light-duty status intermittently until mid-April 1985 when his chiropractor, Donald Gibson, authorized his return to work without restrictions. The chiropractor also noted that the employee might "have some symptoms which at times may necessitate some job modifications." The employee continued to see the chiropractor about two to three times per month. In April and May 1985, the employee was examined by an orthopedic surgeon and a neurologist. The doctors found the employee orthopedically and neurologically normal.

The record indicates the employee was a reliable worker. Between 1984 and 1986, he missed only one day for a funeral. Other employees would take advantage of him at work by persuading him to "trade" their weekend shifts with his regular work-day

shifts. The employer had to explain to the employee that he was not obligated to make these trades. Because of the employee's seniority status, in June 1986, the employer gave the employee a supervisory position. The employee had trouble with record-keeping and supervising people. By mutual agreement, he returned to his former general labor position. The employee never complained about any physical problems although he continued to see his chiropractor. In March 1986, the employee started seeing another chiropractor, Dr. Zachary Zachman, on a weekly basis until December 1986.

In January 1987, the employee found another job at Landscape Structures in Delano. The employee's brother-in-law worked at Landscape Structures; and his wife's parents lived in Delano. They had planned to live with her parents until they could make other arrangements. On January 29, 1987, the employee told his night superintendent at Kraft that he had found another job and would be leaving the company. On January 30, 1987, he gave his 2–week notice.

Prior to working for Landscape Structures, the employee was required to have a pre-employment physical examination. The doctor's report indicated that the employee reported he had an occasional "sore back;" and the report also indicated that, on examination, the doctor found the employee had a hearing loss and a normal back. According to the employee, on February 2, 1987, he learned that he would not be offered the Landscape Structures job because of his hearing loss and back problem.

The employee then asked to withdraw his resignation and continue working at Kraft, but his request was denied. According to the employer, it was apparent the employee was not happy at Kraft and would be seeking employment elsewhere in any event. The employer also had excess employees because of a production change and had already filled the employee's slot. Finally, the employer did not want a disgruntled employee because of the ease with which barrel cheese can be contaminated without detection.

After his job at Kraft ended, the employee applied for unemployment benefits. His wife helped him fill out the application which indicated that he wanted to leave Kraft because of verbal abuse from co-workers and supervisors.

In March 1987, the employee filed a claim petition for temporary total benefits on the basis of the December 17, 1984 injury. In June 1987, the employer had the employee examined by Dr. Mark Friedland, an orthopedic surgeon. Dr. Friedland found no objective basis for the employee's complaints of neck, thoracic, back, arm and leg pain. Dr. Friedland found no objective evidence of permanent impairment or loss of physical function. He did not feel the employee had any need to restrict his work activities; and he did not feel the employee was in need of any further medical care and/or treatment as a result of his December 1984 injury.

In August 1987, the employee commenced a course of weekly treatment with a new chiropractor, Dr. Rita Varner–Otness. This chiropractor felt the employee should be restricted from lifting or carrying over 35 pounds, that he could engage in bending activities only one-third of the day, that he should be limited to standing only 3 hours per day, and that he should have other work restrictions because of his neck.

In October 1987, the employee started working with a qualified rehabilitation consultant (QRC) at the Division of Vocational Rehabilitation. In early 1988, the employee started receiving $710 per month in social security benefits, but he also continued to work with the Division of Vocational Rehabilitation for purposes of finding another job.

The employee's claim for benefits came on for hearing on August 11, 1988. At that time, the employee and his wife testified that the employee sought work at Landscape Structures because of his back problems. Although in his prior deposition the employee said that he felt capable of working at Kraft but wanted to leave because of harassment, at the hearing he denied this. The employee admitted he had memory problems and difficulty under-

standing questions. The employee's wife, who apparently does not have memory problems, testified that the harassment played only a "small" part in the employee's decision to leave Kraft. She did not remember helping the employee fill out his unemployment benefits application.[1]

After putting in his evidence, counsel for the employee moved to have the record remain open "to supply a report from Chiropractor Otness." He did not explain the need for the extra report. Counsel for the employer/insurer objected, arguing that a number of medical reports were already in the record, that the request was late, that he too would like to obtain more reports and that such motions could extend the matter indefinitely. The compensation judge sustained the objection and the matter was dropped.

The compensation judge denied the claim, concluding that the employee had failed to establish that he was temporarily disabled from February 16, 1987 as a result of the work injury. The compensation judge's decision was essentially premised on findings that the employee's testimony was unreliable in most respects because of his mental difficulties, that the employee's testimony was was not credible in other respects, that the testimony of the employee's wife was not credible, and that there was no other reliable evidence to support his claim.

On appeal, the Workers' Compensation Court of Appeals reversed and entered an award of temporary total benefits. In so doing the Workers' Compensation Court of Appeals stated:

> Central to our reversal of the Compensation Judge's denial of benefits upon appeal of the employee, is our conclusion that the Compensation Judge was remiss in concluding that the uncontroverted testimony of an employee who may lack in competency or capacity to testify is therefore not credible. In denying the employee's claim, the Compensation Judge concluded that memory problems

and difficulty in determining whether "the employee understood the question put to him" resulted in the employee's testimony being "unreliable in many respects" and therefore lacking in credibility. * * * Although the Compensation Judge also concluded that the medical records conflicted with the testimony of facts and circumstances as the employee remembered them, we disagree with his analysis of the medical records. As a result, we conclude that there is a lack of substantial evidence in the records aside from the testimony of the employee to support the Compensation Judge's determination of a lack of credibility.

The Workers' Compensation Court of Appeals concluded that based on the employee's continuing need for chiropractic treatment, the chiropractor's work restrictions, and absence of a permanent back disability pre-dating the work injury, the employee had established that he was temporarily disabled by his work injury. This appeal followed.

 In reviewing the findings of a compensation judge, the Workers' Compensation Court of Appeals may not disregard the compensation judge's findings, but must affirm them if they are supported by substantial evidence. Such evidence is evidence which a reasonable mind might accept as adequate. Although the Workers' Compensation Court of Appeals is required to look at all the evidence in performing its review function, it must give due weight to the compensation judge's opportunity to judge the credibility of the witnesses and must uphold the findings based on conflicting evidence or evidence from which more than one inference might reasonably be drawn. *Hengemuhle v. Long Prairie Jaycees*, 358 N.W.2d 54, 59–60 (Minn.1984). *Accord, Gibberd by Gibberd v. Control Data Corp.*, 424 N.W.2d 776, 779 (Minn. 1988). The employer/insurer argue that the Workers' Compensation Court of Appeals, without apparent justification, failed to give due weight to the compensation

---

1. The unemployment benefits application form was typed and obviously prepared by the employee's wife.

judge's opportunity to determine the credibility of the witnesses, substituted its own view on that issue, and also failed to accept inferences the compensation judge had reasonably drawn from the evidence. *Hodge v. Hodge Const.,* 376 N.W.2d 694 (Minn. 1985). We agree.

Assessment of witnesses' credibility is the unique function of the trier of fact. *Brennan v. Joseph G. Brennan, M.D., P.A.,* 425 N.W.2d 837, 839–40 (Minn.1988). In this case, the record amply supports the compensation judge's credibility assessments. As the employer/insurer note, the compensation judge rejected the employee's testimony primarily because it was unreliable due to his mental difficulties. The compensation judge also found his testimony lacking in credibility in certain instances such as when he denied making certain statements in a prior deposition. The compensation judge rejected the testimony of the employee's wife because of her selective recall; this assessment was also borne out by the record. For example, the employee's wife arranged the chiropractic appointments. She remembered the visits after the December 1984 injury, but she could not recall the visits in April and August 1984. She was also unable to recall the circumstances surrounding the preparation of the employee's unemployment benefits application, which indicated the employee wanted to leave Kraft because of harassment, although the application form clearly shows that she prepared the application for the employee. We do not believe the compensation judge was "remiss" in his evaluation of the witnesses' testimony, and it seems to us the Workers' Compensation Court of Appeals unjustly criticized him.

The employee has the burden of establishing that a work-related injury caused his or her disability. *Salmon v. Wheelabrator Frye,* 409 N.W.2d 495, 497 (Minn.1987). In this case, the compensation judge found that the employee failed to meet this burden; and this finding is supported by the fact that the employee was authorized to return to work without restrictions in April 1985, that at least three medical doctors found nothing objectively wrong with his back, and that he worked at his pre-injury job without complaint. While three chiropractors apparently felt the employee was in need of regular chiropractic care, and even though the last chiropractor felt the employee was in need of significant work restrictions, it seems to us there was sufficient evidence from which the compensation judge reasonably inferred that the employee was not disabled because of his 1984 back injury. As we have stated before, "[t]he point is not whether we or the [Workers' Compensation Court of Appeals] might have viewed the evidence differently, but whether the findings of the compensation judge are supported by evidence that a reasonable mind might accept as adequate." *Redgate v. Sroga's Standard Serv.,* 421 N.W.2d 729, 734 (Minn.1988). Accordingly, the contrary findings of the Workers' Compensation Court of Appeals are reversed and the findings of the compensation judge, including the denial of temporary benefits, are reinstated.

We do note, however, that the facts in this case are most distressing. The employee worked for the employer for 10 years. He was extraordinarily reliable and performed well despite his mental problems. He had an opportunity to work elsewhere and gave notice. When the new job fell through two days later, the employer would not take the employee back. While it appears to us the employer may have unfairly handled the situation, it still does not seem that it can be remedied through the workers' compensation system.

Reversed and decision of the compensation judge reinstated.