**K. Jean DILLE, Relator,**

v.

**KNOX LUMBER/DIVISION OF SOUTHWEST FOREST,**
**Self–Insured, Respondent.**

No. C4–89–1423.

Supreme Court of Minnesota.

March 16, 1990.

Raymond R. Peterson, Minneapolis, for appellant.

Carol A. Ellingson, St. Paul, for respondent.

COYNE, Justice.

The Workers' Compensation Court of Appeals, by majority decision, affirmed a compensation judge's denial of benefits for permanent partial disability. We affirm.

The facts on which the decision below rests, briefly stated, are these:

The employee had a rectocele and an enterocele which were surgically repaired in September 1982. The employee alleged that while she was lifting at work on October 4, 1983, she suffered an injury in the nature of an enterocele which was visible to her upon self-examination. The employee underwent repair of the enterocele in January 1984. In March 1984, the employee had another non-work injury in the nature of a cystocele.

A rectocele is a bulging of the rectum into the vagina; an enterocele is a bulging of the rectosigmoid colon into the vagina; and a cystocele is a bulging of the bladder or the "cystovaginal wall" into the vagina.

These events occur as a result of a thinning of the fascia, and unlike the "common hernia," no real hole in the fascia develops. While in extreme cases a rectocele and a cystocele can be seen through the opening of the vagina, rarely does an enterocele bulge all the way down so that it is visible at the introitus.

The compensation judge concluded that the employee had failed to prove that her enterocele injury was due to a lifting incident at work because her testimony at the hearing was impeached by prior inconsistent statements concerning (a) the time of day that it occurred, (b) the location in the store where it occurred, (c) and the type of stock she was lifting. In addition, the medical records made shortly after the alleged lifting incident do not contain any indication that the incident had occurred at work. Finally, the employee's testimony that she found evidence of the enterocele upon self-examination was contradicted by the medical records of her treating gynecologist.[1] The decision was, in essence, a credibility evaluation which was affirmed by the Workers' Compensation Court of Appeals, albeit by majority decision. By writ of certiorari, the employee seeks reversal of the causation determination.

On numerous occasions, this court has stated that assessment of the credibility of a witness is the unique function of the trier of fact. *E.g., Tolzmann v. McCombs–Knutson Assocs.,* 447 N.W.2d 196, 198 (Minn.1989); *Even v. Kraft, Inc.,* 445 N.W.2d 831, 835 (Minn.1989); *Tews v. Geo. A. Hormel & Co.,* 430 N.W.2d 178, 180 (Minn.1988); *Brennan v. Joseph G. Brennan, M.D., P.A.,* 425 N.W.2d 837, 839–40 (Minn.1988).[2] In this case, the impeach-

---

1. The employee's doctor found no evidence of an enterocele two days after the alleged work incident. One of the gynecologists retained by the employer testified that an enterocele seldom will be so severe as to protrude as described by the employee. The dissent attempts to explain the absence of evidence of an enterocele or bulge two days after the alleged injury by reference to medical records made weeks after the alleged injury when the enterocele became manifest and was diagnosed by the employee's treating doctor, speculating that the bulge must have been present as alleged on the date of injury and receded after the employee had rested before her first appointment with her doctor in October 1983. Not even the employee's principal medical expert advanced such a theory.

2. The dissent cites *Nord v. City of Cook,* 360 N.W.2d 337, 342 (Minn.1985) and *Klapperich v. Agape Halfway House, Inc.,* 281 N.W.2d 675, 680 (Minn.1979) as supporting the proposition that a compensation judge's credibility evaluation need not be accorded any more deference than any other factual finding. Neither *Nord* nor *Klapperich* addressed the evaluation of the cred-

ment of the employee's testimony concerning how her injury occurred justified the compensation judge's determination that there was a lack of evidence to sustain the employee's claim that the injury occurred at work. *See Kulenkamp v. Timesavers, Inc.*, 420 N.W.2d 891, 894 (Minn.1988) (compensation judge's finding that a worker did not sustain a traumatic hernia reinstated by this court where contemporaneous medical records did not support the claim); *Zellmer v. Univac*, 290 Minn. 271, 275, 187 N.W.2d 280, 282 (1971) (compensation judge not obligated to accept impeached testimony as true).

■ Moreover, the compensation judge's determination had sufficient medical support. Although the employee's treating gynecologist did state in a letter dated April 16, 1984, that her enterocele repair four months earlier was "related to an incident occurring at her job," his medical records of her visit shortly after the alleged incident make no reference to a work-related injury, and experienced counsel did not depose the doctor to explore the basis for his opinion. Instead, the employee elected to rely on the testimony of an industrial medicine specialist who is not a gynecologist, and who does not regularly perform surgery outside of necessary "emergency medicine." The industrial medicine specialist opined that the alleged lifting incident at work created "the symptoms that she had acutely and that those symptoms are related to the development of further pelvic floor relaxation" and the need for surgery. That opinion was based essentially on the employee's report of the onset of symptoms at work, the continuation of her symptoms, and her ultimate need for surgery in light of his general knowledge of hernias. The doctor had never surgically repaired an enterocele and was unaware of any medical literature linking the development of an enterocele with lifting. The difficulty with both opinions

is, of course, that the compensation judge did not believe the employee's history of a work-related lifting incident on which these doctors' opinion of causation rested.

The consulting gynecologist retained by the employer believed the alleged work-related injury was not a substantial contributing cause of the employee's disability. He was of the opinion the employee's enterocele was the result of a weak fascial support, that it had developed over a period of time, and that even though lifting of any nature "would not help things," it was not the cause. The employer's other gynecological consultant testified that in his 27 years of practice he had never seen a case of an enterocele resulting from a sudden strain such as heavy lifting. Generally, the compensation judge's choice between experts whose testimony conflicts is upheld when the facts assumed by the chosen expert in forming his opinion are supported by the evidence. *Nord*, 360 N.W.2d at 342–43. Accordingly, even if the compensation judge's credibility assessment were suspect, there was sufficient medical evidence to support her ultimate conclusion that the work incident was not a substantial contributing factor in the need for surgical repair some three months later.

■ The burden rests on the employee to prove by a fair preponderance of the evidence that her injury is compensable. Where two opposing inferences can be drawn with equal justification from the same circumstantial evidence, it cannot be said that one preponderates over the other, and in that event the party having the burden of proof must lose. If different inferences can justifiably be drawn from the evidence in the case, the inference drawn by the factfinder will not be disturbed on appeal. *Gerhardt v. Welch*, 267 Minn. 206, 210, 125 N.W.2d 721, 724 (1964). It is not the function of this court to weigh the evidence to find facts to meet our preference. *Hengemuhle v. Long Prairie Jay-*

ibility or believability of a witness testifying under oath. Rather *Nord* and *Klapperich* both involved the reliability of a medical expert's opinion premised on factual assumptions that were not supported by evidence adduced at a subsequent evidentiary hearing. The adequacy

of the foundation for expert opinion testimony has nothing to do with the credibility of a witness' recitation of facts on which a claim is based; and neither *Nord* nor *Klapperich* apply in the context of credibility assessments as that issue is presented here.

*cees*, 358 N.W.2d 54, 60 (Minn.1984). The firmly established rule is that "this court will intrude only if, viewing the facts in the light most favorable to the findings, it appears that the findings are manifestly contrary to the evidence or that it is clear reasonable minds would adopt a contrary conclusion." *Id.* at 61 (footnote omitted). That this court might have found the facts differently is not the basis for reversal in a case such as this where the facts, viewed in the light most favorable to the findings, amply sustain the determination of the compensation judge and the Workers' Compensation Court of Appeals.[3]

Affirmed.

YETKA, Justice (dissenting).

I would reverse both the compensation judge and the Workers' Compensation Court of Appeals because I believe that the findings are manifestly contrary to the evidence. At the outset, it is important to point out that, in order to be entitled to compensation, the employee does not need to show that the October 1983 lifting incident was the *sole* cause of her disability, only that it was a substantial *contributing* cause of her disability. *Roman v. Minneapolis Street Ry. Co.*, 268 Minn. 367, 380, 129 N.W.2d 550, 558 (1964). I submit that the facts are uncontradicted that the employee was injured at work on October 4, 1983, even though there may be minor discrepancies as to the time and place. Indeed, the employee first required surgery in 1982 to repair a rectocele and an enterocele. This work-related disability very likely could have resulted in workers' compensation benefits had the employee filed for the same. Instead, she elected to collect disability benefits from Health Care Providers, which covered non-work-related in-

juries. I believe that a more fully developed set of facts is needed to analyze this case properly.

The employee in this case was 57 years old on the date of the hearing. She had been married for 35 years and had two adult children. In 1969, the employee started working for Knox Lumber as a cashier. In 1976 or 1977, she began working as a salesperson. Her job consisted primarily of customer service. Occasionally, she would have to restock the shelves, which involved lifting up to 60 pounds.

In September 1982, the employee had surgical repair of both a rectocele and an enterocele. Following recovery from surgery, the employee returned to her regular job with the employer without restrictions. She filed for and received disability benefits from Health Care Providers.

On October 4, 1983, the employee experienced a snapping sensation in her pelvis which she alleged occurred during a lifting incident at work. The records indicate that the employee reported the incident to her supervisor the next day.[1]

The employee telephoned her surgeon, Dr. McCaffrey, on October 4, 1983, and reported that she had been lifting that day and felt pelvic pressure. The employee was seen by Dr. McCaffrey on October 6, 1983. Dr. McCaffrey's October 6, 1983 examination notes state:

> Had a weight-lifting strain occur within the last 2 or 3 days, and felt that something happened in her pelvis to produce some additional relaxation, similar to her pre-op condition.
>
> On EXAM: Ext.Gen: normal supports look good. On straining down there is no relaxation pelvic floor. I would have to believe that perhaps she

---

3. The dissent apparently believes that the employee's first surgery in 1982 followed a work-related disability and was therefore, compensable. That the 1982 disability and surgery was not compensable was never in dispute. While the employee's primary medical expert, the industrial medicine specialist, at one time "thought there might be a case for a Gillette type injury prior to 1982," there was no other support in the record for that proposition; and the employee has never alleged that the 1982 dis-

ability and need for surgery arose out of the employment with the employer.

1. The employee testified that she reported the injury to her supervisor the next day, but she also testified that she did not work the next day. The first report of injury is dated October 10, 1983. The employer's other records pertaining to the initial report of injury were undated, but indicate that October 5 was the date of the initial report.

strained some muscles in the pelvis of the levator sling muscles but there doesn't appear to be any sign of or breakdown of the operative supports. I advised some conservative palliative measures, heat and a little less strainful work for a couple of weeks and if symptoms are better she will not have to come back. If they aren't we will have to simply reevaluate her on a prn basis.

These exam notes show that he acknowledged that the employee was hurt by lifting and that he might have to re-evaluate her in the future. Moreover, the notes of the October 4 telephone call and the October 6 visit mention that the employee reported a lifting incident.

The employee returned to Dr. McCaffrey on October 28, 1983, complaining of pressure in the vagina and lower pelvis. This time, Dr. McCaffrey found a bulge at the top of the vaginal vault suggesting an enterocele, and he advised that this would probably require surgical repair in the future. According to Dr. McCaffrey's October 28, 1983 notes, the employee's symptoms occurred at the end of a "long day and hard work." He also noted that the bulge became apparent "[a]fter straining down and after being on her feet for long periods of time." The employee continued to work for the employer. She was allowed to modify her duties so as to avoid heavy lifting.

On December 27, 1983, the employee was again seen by Dr. McCaffrey, who determined that the employee was in need of surgery for her recurrent enterocele. On December 27, 1983, Dr. McCaffrey wrote:

This problem that was described in Oct., apparently seemed to come on historically, with the patient describing a rather vivid sensation of tissue giving and possible [sic] a hernia-type of wrench when she lifted or strained at work, roughly on or about the 4th of Oct. There was some sign of a possible enterocele forming on the 28th and today, on straining down she has a bulge of the anterior and superior vaginal wall that protrudes from the vagina. *It does protrude, she says, most of the time when she is in the standing position; recedes when she lies down or sits down.*

(Emphasis added.) Dr. McCaffrey also prepared a physician's report to the workers' compensation division based on his reports of October 6, October 28 and December 27, 1983, stating that the employee's injury was "caused, aggravated or accelerated by" her employment activity, that is, lifting on October 4, 1983.

The employee's second surgery was done on January 10, 1984. In March 1984, the employee had a third surgical repair because the anterior wall of the vaginal vault had prolapsed. The prolapse occurred when the employee was doing some recreational walking.

On June 1, 1984, the employee returned to her regular job with the employer. Her job was modified to accommodate her restrictions on lifting, and she experienced no wage loss.

On February 19, 1987, the employee filed a claim petition, seeking permanent partial disability benefits for a 60% permanent impairment to an internal organ as well as compensation for sexual dysfunction and urinary tract disorder which were alleged to be related to the vaginal injury.

The matter came on for hearing before a compensation judge on June 29, 1988. At that time, the employee testified that on October 4, 1983, she was working with "shelving;" specifically, she was lifting boxes of shelf brackets in the overstock area of the store when she felt a popping sensation in her vagina. She went to the restroom to examine herself. On self-examination, the employee detected a bulge from the opening of her vagina. The employee was impeached by an October 1983 report in which the employee's supervisor reported that the employee said that the incident occurred around 6:30 a.m. in the cabinet hardware aisle when she was lifting new cabinet hardware bins, by a January 1984 statement given to an insurance investigator in which the employee said the lifting incident occurred about mid-day when she was in the back room where the stock was kept, and by a May 1987 report by Dr. Grudem, who recorded that the em-

ployee said that the incident occurred in the stock balcony when she was lifting shelf brackets.

The compensation judge found that the recurrence of the enterocele on October 4, 1983, did not arise out of or in the course of the employee's employment with the employer. With respect to this determination, the compensation judge made the following observations:

The employee's testimony was not deemed credible by this Compensation Judge due to several inconsistencies between her testimony and the documentary evidence. The employee testified that she was lifting boxes of shelf brackets in the overstock area located in the balcony when she felt something pop in her vaginal area. The employee further testified at the hearing that it felt similar to the rectocele that she had experienced in September of 1982 and she immediately went to the bathroom to examine herself. The employee testified that she saw a bulging from the opening of her vagina. The employee further testified that she either immediately reported the accident or waited to report the accident to Lodean Albers, who was a female supervisor. See, Respondent's Exhibit 3. The employee testified that the entire form was filled out with the exception of number twelve which is the detailed description of the accident. Number nine was filled in. Number nine indicated that the accident occurred in the cabinet hardware isle [sic]. The cabinet hardware isle [sic] is located in the main part of the store where customers have access. This is different from the stock balcony which is up a flight of stairs from the ground area and where the customers do not have access. The description of the accident that Ms. Albers testified she must have received from the employee, Jean Dille, indicated that the employee was lifting new cabinet hardware bins. See, Respondent's Exhibit 3.

The compensation judge noted the employee's prior inconsistent statements with respect to the time of day the incident occurred, and she further noted that the doctor's examination on October 6, 1983, which showed no relaxation of the pelvic floor while straining down, contradicted the employee's account about finding a protrusion on self-examination.

Both parties appealed to the Workers' Compensation Court of Appeals. By majority decision, the court affirmed. The dissenting panel member felt that there was a gender bias problem here. This appeal followed.

This court acknowledges that assessing a witness's credibility is a "unique function of the trier of fact." *Tolzmann v. McCombs–Knutson Assoc.*, 447 N.W.2d 196 (Minn.1989); *Brennan v. Joseph G. Brennan, M.D., P.A.*, 425 N.W.2d 837, 839–40 (Minn.1988). Yet, a compensation judge's finding regarding credibility is not immune from review; the WCCA must only "give due weight to the opportunity of the compensation judge to evaluate the credibility of witnesses appearing before the judge." *See Hengemuhle*, 358 N.W.2d at 59–62 (holding that the compensation judge's findings were manifestly contrary to the evidence). We do consider, as with other findings of fact, whether such credibility findings are borne out by the record. *See, e.g., Even v. Kraft Inc.*, 445 N.W.2d 831, 834–35 (Minn.1989) (holding that, where "there was no other reliable evidence" to support employee's claim, the record amply supported compensation judge's credibility assessment of employee's testimony); *Hodge v. Hodge Constr.*, 376 N.W.2d 694, 698 (Minn.1985) (WCCA, "without apparent justification," failed to give due weight to credibility findings). Reviewing credibility findings in the same manner as other fact findings guards against the factfinder clothing decisions as based on lack of credibility in order to foreclose a claimant's chance for a successful appeal. *See Claim of Bromley*, 330 N.W.2d 498, 502 (N.D.1983).

In *Tolzmann*, this court independently reviewed the record and upheld the compensation judge's credibility finding as supported by evidence that a reasonable mind would accept as adequate. We noted that the compensation judge premised his credi-

bility judgment on "material" inconsistencies in the employee's testimony (in a 1987 deposition, he falsely denied that he had any past back problems), lack of documentation of a work-related injury made when the first injury occurred, and testimony of co-workers contradicting the employee's claim that he fell at work and did heavy physical labor. *Tolzmann*, 447 N.W.2d at 197.

We have affirmed the WCCA's decision to reverse a compensation judge's credibility assessment of two doctors whose testimony conflicted. *Nord v. City of Cook*, 360 N.W.2d 337 (Minn.1985). In *Nord*, the compensation judge found that the claimant's employment did not cause his fatal heart attack. There, as here, the compensation judge gave no weight to the claimant's doctor's opinion based on the claimant's explanation, but relied on a conflicting adverse medical opinion. This court approved of the WCCA's reasoning that an adverse medical opinion was "of no substantial weight when one considers the chronology of events, medical history and information obtained from the employee immediately following his infarction, and the medical opinion in support of petitioner's claim." *Id.* at 342. While this court noted that the trier of fact must resolve differences between experts, the trier of fact's choice "is not upheld where the facts assumed by the expert in rendering his opinion are not supported by the evidence." *Id.*, at 342–43 (citing *Klapperich v. Agape Halfway House, Inc.*, 281 N.W.2d 675, 680 (Minn.1979)).

The facts in this case resemble *Nord* more than *Tolzmann*. Here, like the claimant in *Nord* and unlike the claimant in *Tolzmann*, the employee immediately reported the injury to her employer and her doctor. Here too, the medical opinions of Dr. McCaffrey and Dr. Grudem support the employee's claim. Other facts differentiate this case from *Tolzmann*: no one affirmatively denies that the employee felt a popping sensation while lifting at work or that she felt a bulge on self-examination. Moreover, the inconsistencies in the employee's statements do not relate to material issues, but, rather, are minor discrepancies easily attributable to a slip of memory.

In this case, the employee's statement, written 3 months after the October 3, 1983 incident, and her testimony, made over 4 years after the incident, did contradict her supervisor's description of exactly where the employee was in the store, what kind of hardware she was lifting, and the time of her injury. At the hearing before the compensation judge, the employee testified that on October 4, 1983, she was working in "shelving." She felt a popping sensation in her vagina as she was lifting boxes of shelf brackets in the overstock area of the store. This testimony relates the same facts as written in her statement dated January 3, 1984, and as told to Dr. Grudem.

The only documentary evidence that conflicts with the testimony and statements of the proceedings is a statement prepared by the employee's supervisor, Lodean Albers, stating that the employee was injured at 6:30 a.m. in the cabinet hardware aisle while lifting new cabinet hardware bins. The record indicates that cabinet bins are another type of shelving.

The compensation judge also doubted that the employee found a bulge on self-examination. This finding is also contrary to the evidence. The employee found a bulge on self-examination immediately after she had strained herself lifting boxes of shelving. After the employee finished her shift on October 4, 1983, she went home and elevated her legs and feet. When Dr. McCaffrey examined her 2 days later, she had not worked and had been resting. Thus, the fact that he did not find a bulge at that time and that the employee did notice a bulge immediately after straining is perfectly consistent with his notes of October 28, 1983, and December 27, 1983, indicating that the bulge presents itself after straining and fatigue.

The compensation judge discounted the opinion of Dr. Grudem and the medical records from Dr. McCaffrey primarily because they relied on the employee's statements. These physicians, however, based their conclusions on physical examinations

as well as the employee's description. Dr. Grudem stated that the employee's statements were consistent with the "physical findings and the clinical course." Medical examinations necessarily rely in part on the patient's statements. Thus, by this compensation judge's standards, independent medical reports carry only as much weight as the claimant's credibility. Under such a standard, except for the purposes of determining the extent of disability, why have medical testimony at all? The testimony and statements of Dr. McCaffrey and Dr. Grudem directly support the employee's claim. Moreover, although—based on his adverse medical examination—Dr. Crabb opines that her injury was not work-related, he does not deny that lifting at work could have aggravated the employee's condition.[2]

It appears to me that, once the compensation judge believed that the 1982 surgery was non-work related, the judge became convinced that the injury in 1983 and the required surgery performed in 1984 were also non-work related. The employee is, in effect, being penalized for not having filed a workers' compensation claim in 1982 when she may have been qualified to collect benefits. Clearly, that conclusion is not justified because, even if disability results from a work-related aggravation of a pre-existing physical infirmity, it is compensable. *See Gillette v. Harold, Inc.*, 257 Minn. 313, 323, 101 N.W.2d 200, 207 (1960).

Thus, I would reverse and remand to the compensation judge for determination of workers' compensation benefits.

---

2. Dr. Crabb, an obstetrician/gynecologist under contract with Diversified Medical Resources to do examinations, examined Mrs. Dille. Dr. Crabb opined that there would have been evidence of a rectocele, enterocele or cystocele on physical examination on October 6, 1983, if Mrs. Dille had strained herself on October 4, 1983, as claimed. He did admit, however, that "certain-ly lifting of any nature, whether it be at home or at work, would not help things. But I don't think it was the cause [of her disability]." In his initial report dated May 15, 1987, Dr. Crabb stated: "It is conceivable that lifting at work did make things somewhat worse but was not the instigating factor."