Severt WEME, Respondent,

v.

Arlene LASTAVICA, Mike Lastavica, d/b/a L.A. Industries, Uninsured, Respondent–Below,

Fuel Recovery Co., Inc., et al., City of St. Paul, Self Insured, Respondents,

and

Special Compensation Fund, Relator,

and

Second Injury Fund, Respondent.

No. C4–90–472.

Supreme Court of Minnesota.

July 20, 1990.

Hubert H. Humphrey, III, Atty. Gen., Rebecca H. Hamblin, Sp. Asst. Atty. Gen., St. Paul, for Special Compensation Fund.

Timothy W.J. Dunn, St. Paul, for Severt Weme.

Gerald M. Linnihan, St. Paul, for Fuel Recovery Co., Inc.

Frank E. Villaume, III, Asst. City Atty., St. Paul, for City of St. Paul.

Sara Stoltman, Minnesota Dept. of Labor and Industry, St. Paul, for Second Injury Fund.

POPOVICH, Chief Justice.

The Special Compensation Fund appeals from a decision of the Workers' Compensation Court of Appeals affirming, by majority decision, a compensation judge's determination that the City of St. Paul was not a general contractor for purposes of imposing liability on the City of St. Paul under Minn.Stat. § 176.215, subd. 1 (1988).[1] We affirm.

---

1. Minn.Stat. § 176.215, subd. 1 (1988) provides:
   Where a subcontractor fails to comply with this chapter, the general contractor, or intermediate contractor, or subcontractor is liable for payment of all compensation due an employee of a subsequent subcontractor who is engaged in work upon the subject matter of the contract.

Through its forestry operations, the City of St. Paul was engaged in the trimming of trees and the removal of dead and diseased trees. On land the city leased from the St. Paul Port Authority, the city maintained equipment and structures identified as the Pig's Eye Wood Recycling Facility. The City of Minneapolis also had a property interest in a part of the facility. Crews from both cities would bring tree trunks and limbs to the Pig's Eye Wood Recycling Facility which was used mainly as a dumping site. L.A. Industries was a business owned and operated by Mike and Arlene Lastavica. In 1980, the city agreed to lease to L.A. Industries the operation of the Pig's Eye Wood Recycling Facility together with the equipment used to process wood chips.

L.A. Industries hired Severt Weme to assist in the wood processing operation. City employees would deliver trees to the site, separate the usable wood from the unusable wood, and drop the wood behind the chipper. Severt Weme and another L.A. Industries employee would then process the wood with equipment owned by both the city and L.A. Industries. They also made deliveries of wood chips to L.A. Industries customers.

On March 31, 1986, Weme was injured in the course and scope of his employment with L.A. Industries; and he filed a claim for workers' compensation benefits. Because L.A. Industries was uninsured for workers' compensation liability, the Special Compensation Fund commenced the payment of benefits under a temporary order. In May 1988, the city was joined as a party to the proceedings.

At the time the matter came on for hearing before the compensation judge, the primary issue was whether the city was a general contractor liable for workers' compensation benefits under Minn.Stat. § 176.215, subd. 1. The compensation judge determined that the city was not liable under the "contractor under" statute,

finding there was insufficient evidence that the city had contractual obligations with any third party or that the city was a general or intermediate contractor in connection with the work being performed by L.A. Industries on March 31, 1986.

On appeal, the Workers' Compensation Court of Appeals, sitting en banc, affirmed by majority decision, the compensation judge's finding that the city did not qualify as a general contractor under the *Hengemuhle* [2] standard of review. The majority distinguished this case from *Moorhead v. Grassle*, 254 Minn. 103, 107, 93 N.W.2d 678, 681 (1958), a case in which an owner was also deemed to be a contractor. The Workers' Compensation Court of Appeals rejected the Special Compensation Fund's contention that the city, like Grassle, was an owner and general contractor:

> The City of St. Paul [unlike Grassle] * * * had no particular interest in L.A. Industries' wood chipping operation. L.A. Industries was entitled to sell the wood chips to whatever customers it saw fit, and to retain all profits. Although City employees delivered the trees to the Pig's Eye Facility, the City had no control over trees once delivered, or of the wood chipping work itself. The City neither participated in nor did it direct or profit from this operation. Finally, the City did not hold itself out to be a contractor as Mr. Grassle did when he applied for the city permit.

*Weme v. Lastavica*, ___ W.C.D. ___, No. 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, slip op. at 5 (Filed Jan. 31, 1990).

■ Under Minn.Stat. § 176.215, when a subcontractor fails to insure or self-insure for workers' compensation liability, the general or intermediate contractor becomes liable for all compensation benefits due the subcontractor's injured employee, but it also has the right to recover from the uninsured subcontractor all benefits paid. *Klemetsen v. Stenberg Constr. Co.*, 424 N.W.2d 70, 73 (Minn.1988). Most states

---

The Special Compensation Fund is party in this matter because the employer, L.A. Industries, was uninsured for workers' compensation liability. Minn.Stat. § 176.183, subd. 1 (1988).

2. *Hengemuhle v. Long Prairie Jaycees*, 358 N.W.2d 54, 60 (Minn.1984).

have adopted similar "contractor-under" statutes. 1C A. Larson, *The Law of Workmen's Compensation* §§ 49.11–.12 (1986).[3] "Under a strict construction of these [statutes], courts have * * * refused to apply the 'contractor-under' clause to 'owners,' entrepreneurs, agents, and governments of whom it could not be said that they had first taken on contractual obligations with a third party, and had then subcontracted out all or part of these obligations." *Id.* § 49.13. In the construction business, the "owner" obstacle has been generally overcome by finding the owner was its own general contractor. *Id.; see Moorhead*, 254 Minn. at 107, 93 N.W.2d at 681.

■ On appeal to this court, the Special Compensation Fund again argues that the city was both owner and general contractor within the meaning of *Moorhead*. The compensation judge and the Workers' Compensation Court of Appeals majority, however, carefully considered *Moorhead* and concluded there was insufficient factual support for this contention. The question as to whether the city was a contractor is a factual matter. *See Moorhead*, 254 Minn. at 109, 93 N.W.2d at 682. "Where two opposing inferences can be drawn with equal justification from the same circumstantial evidence, it cannot be said that one preponderates over the other, and in that event the party having the burden of proof must lose. If different inferences can justifiably be drawn from the evidence in the case, the inference drawn by the factfinder will not be disturbed on appeal." *Dille v. Knox Lumber/Division of SW Forest*, 452 N.W.2d 679, 681 (Minn.1990). In our view, the findings of the compensation judge, as affirmed by the Workers' Compensation Court of Appeals, are not manifestly contrary to the evidence. *Hengemuhle*, 358 N.W.2d at 60.

Affirmed.

YETKA, J., dissents with an opinion.

YETKA, Justice (dissenting).

I respectfully dissent. I believe that the compensation judge and the majority of the Workers' Compensation Court of Appeals adopted an unreasonably strict construction of the term "contractor" for purposes of Minn.Stat. § 176.215, subd. 1 (1988). The result is a definition that treats municipalities more favorably than private employers simply because municipalities do not owe "contractual" obligations to third parties in the traditional sense.

In this case, the City of St. Paul allowed L.A. Industries to use, virtually free of charge, approximately $300,000 worth of equipment such that L.A. Industries could perform an essential part of the city's Dutch elm disease control program. If any private employer set up such a transparent relationship in order to circumvent the requirements of the Workers' Compensation Act, this court would have no trouble piercing the formal relationship and addressing its substance. I see no reason to refrain from doing so in this case.

The proper definition of the term "contractor" as used in Minn.Stat. § 176.215, subd. 1 is a question of law. *See Doe v. Minnesota State Board of Medical Examiners*, 435 N.W.2d 45, 48 (Minn.1989). In enacting this statute, the legislature intended to encourage contractors to require their subcontractors to comply with the Workers' Compensation Act. *Klemetsen v. Stenberg Constr. Co., Inc.*, 424 N.W.2d 70, 73 (Minn.1988). Accordingly, the term "contractor" should be construed so as to effectuate this legislative intent.

In "finding" that the City of St. Paul was not a contractor, the compensation judge did not apply an accepted definition of the term "contractor." Long ago, this court recognized that, when a person or organization is acting to improve its own property, that person may be both an owner and a contractor even in the absence of clear "contractual" obligations to a third

---

**3.** It has become quite common to refer to the general contractor's liability as that of the "statutory employer" to a "statutory employee." In this state, however, the terminology is inaccurate because the general contractor is merely regarded as a guarantor, having none of the immunities, such as immunity from common-law suit, that go with employer status. *Klemetsen*, 424 N.W.2d at 72–73; *see* 1C A. Larson, *supra*, § 49.13.

party. *Moorhead v. Grassle,* 254 Minn. 103, 107, 93 N.W.2d 678, 681 (1958); *see also Pelletier Corp. v. Chas. M. Freidheim Co.,* 383 N.W.2d 318, 322 (Minn.App.1986) ("there is nothing unusual * * * about a property owner acting as his or her own contractor"). The city's role in this case is indistinguishable from that played by the partnership found to be a contractor in *Moorhead. Moorhead,* 254 Minn. at 109, 93 N.W.2d at 682. Both the city and the partnership delegated an essential part of a property improvement project to thinly capitalized individuals who could not reasonably be expected to carry worker's compensation insurance and then allowed them to perform hazardous work without requiring them to prove that they had insurance.

Finally, public policy demands that the City of St. Paul take responsibility for its failure to require L.A. Industries to carry insurance. In this case, the special fund paid at least $26,514 to or on behalf of the injured worker. There is no public policy reason for imposing this cost on the special fund when it was the City of St. Paul that was in the best position to assure that L.A. Industries carried insurance.

For all of the above reasons, I would hold that the compensation judge and the Workers' Compensation Court of Appeals abused their discretion in this case in construing the term "contractor" to require contractual obligations owed to a third party.